THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UTAH DIVISION OF CONSUMER PROTECTION,<br><br>Plaintiff,<br>vs.<br><br>MANDATORY POSTER AGENCY, INC., a Michigan corporation, UTAH COUNCIL FOR CORPORATIONS, UTAH LABOR LAW POSTER SERVICE, INC., and STEVEN J. FATA, and JOSEPH FATA,<br><br>Defendants. | Case No. 2:17-cv-00760<br><br><br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Plaintiff, the Utah Division of Consumer Protection (the "Division") brought a claim against the Defendant, Mandatory Poster Agency, Inc. ("MPA") in the Third Judicial District Court of Salt Lake County. MPA removed the action based on federal diversity jurisdiction. Plaintiff Division moves for the case to be remanded to the Third Judicial District Court of Salt Lake County.

## DISCUSSION

The Division is a state agency within the Utah Department of Commerce. Utah Code Ann. § 13-1-2(2)(e). The Division is charged with protecting the public, and is authorized to take action to "prevent deceptive, misleading, and false advertising practices in Utah." *Id.*

MPA is a for-profit corporation headquartered in Michigan. MPA does business in Utah under the names Utah Council for Corporations ("UCC") and Utah Labor Law Poster Service ("ULLPS") with addresses also in Michigan. Defendants Steven J. Fata and Joseph Fata are at all times relevant to this case, officers, directors, and shareholders of MPA.

Despite the fact that plaintiff's residence is diverse from defendant's, the Eleventh Amendment provides immunity from liability for state entities in federal court absent a waiver of immunity by the state. *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). For purposes of diversity jurisdiction, the Supreme Court has held that a state entity, such as the Utah Department of Commerce, falls under the same immunity for purposes of diversity jurisdiction only if it is an "arm or alter ego of the State." *Moor v. Alameda City*, 411 U.S. 693, 717 (1973). To make the determination whether an entity is an arm of the state, we engage in two general inquiries: "The court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing." *Watson v. University of Utah Medical Ctr.,* 75 F.3d 569 (10th Cir. 1996) citing *Haldeman v. State of Wyo. Farm Loan Bd.,* 32 F.3d 469, 473 (10th Cir. 1994). The Tenth Circuit has developed five factors to analyze this autonomy; 1) whether state law explicitly identifies the entity as an agency of the State; 2) what degree of autonomy the entity is afforded under state law; 3) whether the entity is state-funded or self-funding; 4) whether the entity is primarily concerned with state or local affairs; and 5) whether the state is liable for judgments against the entity. *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007), *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017). Both MPA and the Division rely on these factors in their analyses, reaching different conclusions.

The Division alleges that it is not autonomous but an "arm or alter ego" of the state and therefore not a citizen for diversity jurisdictional purposes. MPA alleges that the Division is autonomous under these factors. Further, MPA requests jurisdictional discovery to determine the state funding of the

Division (factor 3) as well as The Division's degree of autonomy under state law (factor 2). MPA alleges that the Division has information that will allow it to analyze these factors more extensively and that jurisdictional discovery is necessary to make the jurisdictional decision of citizenship. MPA has also requested oral argument be set. Utilizing the above factors, the court has found that the Division is an arm of the State or a citizen for diversity jurisdiction.

1. **MOTION TO REMAND**

The Division has filed a motion to remand this case back to the state court. It argues it is an "arm of the state" and therefore is provided Eleventh Amendment immunity from liability in federal court. As noted above, the Tenth Circuit has developed five factors to analyze autonomy from the state in which an entity resides; 1) whether state law explicitly identifies the entity as an agency of the State; 2) what degree of autonomy the entity is afforded under state law; 3) whether the entity is state-funded or self-funding; 4) whether the entity is primarily concerned with state or local affairs; and 5) whether the state is liable for judgments against the entity. *Steadfast Ins. Co.,* 507 F.3d at 1253. This autonomy determines whether an entity is an arm of the state and therefore provided Eleventh Amendment immunity. The court will now discuss each of the five factors considered in making its determination that the Division is an arm of the state.

   a. **Whether state law explicitly identifies the entity as an agency of the State**

The Utah State Legislature created the Division and gave it the mandate to administer and enforce the state consumer protection laws. Utah Code § 13-2-1. The division shall be under the supervision, direction, and control of a director. The director shall be appointed by the executive director of commerce with the approval of the governor. The director shall hold office at the pleasure of the governor. Utah Code § 13-2-2. This hierarchy supports the Division's argument that state law identifies the entity as an agency of the state. While neither legislature nor case law have ever explicitly addressed whether the

Division is a politically independent subdivision of the state or merely a state instrumentality, the court finds that a Legislature-created instrumentality would fall under their state authority. Through its creation by the state, the Legislature implied the Division would have state jurisdiction and would not be subject to diversity jurisdiction as a "citizen" of the state.

### b. What degree of autonomy the entity is afforded under state law

In determining the degree of autonomy an entity may have, courts look at the "state's level of guidance and control over the entity." *Watson*, 75 F.3d at 574. The state legislature created the Division to oversee and carry out the State of Utah's control over consumer protection. This alone is compelling in concluding that the Division is an instrumentality of the state and therefore not autonomous. It is carrying out a mission of the state. In *Sturdevant*, the Tenth Circuit considered whether a Community College Board was an arm of the state. The Court concluded that the Board held a considerable degree of autonomy; however, "these powers must be considered in light of the purpose, composition, and function of the state entity in question." *Sturdevant v. Paulsen*, 218 F.3d 1160, 1168 (10th Cir. 2000). This mixture of autonomy and oversight is important in determining whether the Division is an arm of the state. In *Sturdevant,* the court found that the Board's primary focus on state-wide issues was not given enough weight and that the Board was an arm of the state. Similarly, the Division is an instrumentality of the state exercising control over consumer protection state-wide. This makes the Division an arm of the state.

MPA argues that the Division is far more autonomous than an arm of the state. Citing *Garcia*, MPA focuses on the rationale that "the emphasis for determining control is not on who sets the broad general policy, but on who carries out the…. activities indicative of day-to-day management. The mere fact that the state…sets policy…is of little consequence unless the state….is involved in the [entity's] managerial decisions." *Garcia v. Bd. of Educ. of Socorro Consol. Sch. Dist*., 777 F.2d 1403, 1412 (10th Cir 1985). *Garcia* and other school board cases focus on the autonomy school districts have in exercising responsibilities without control from a state level. They own their schools and other real property, they hire their own teachers and administrators, and they report to a locally-owned school board. By contrast,

the Division owns no real property and its employees are paid by and subject to the control of the state. The Division does have the power to convene administrative hearings, commence investigations, issue cease-and-desist orders, dispense citations, initiate judicial enforcement actions, and collect fines and penalties. However, all of these actions fall under the Division acting as an instrumentality of the state for the state purpose of control over consumer protection. The Division does not exercise these powers on its own initiative but on behalf of the state. For these reasons, the court finds the Division is an arm of the state.

      **c. Whether the entity is state-funded or self-funding**

The Division has provided that the Legislature appropriated $2,051,600 of general fund money to the Division for this year's budget. ECF No. 31. It further states that this general fund appropriation represents the vast majority of the Division's expenditures each year. The appropriation bill also states, "This bill appropriates funds for the support and operation of state government for the fiscal year beginning July 1, 2017 and ending June 30, 2018." This evidence supports the Division's argument that it is funded by the State and is an arm of the State. The Utah Code also states that on or before the 1st day of October each year, the director in connection with the executive director shall report to the governor and the Legislature for the preceding fiscal year on the operations, activities, and goals of the Division and the director shall prepare and submit to the executive director a budget of the administrative expenses for the division. Utah Code § 13-2-4.

MPA disputes this evidence by arguing that the Division is self-funding through its empowerment to collect penalties and judgments that finance its continuing operations. This is compelling because outside of state funding it is possible that the Division would be able to fund itself. Both MPA and the Division cite *Watson*, a University of Utah Medical Center case. In *Watson*, the Tenth Circuit held that although the University of Utah Medical Center generated large revenues and only between 3.5 and 5% of the Medical Center's budget came from the state appropriations, the Medical Center was not autonomous from the state. In the case before this court, the Division's funds are provided by statute and regulated to

serve state compelling interests. As mentioned above, the Executive Director is subject to approval by the governor. The Executive Director approves the use of the Division's funds. Because of this chain of command and the statutory regulations of the Division, we consider the Division to be state-funded and an arm of the State.

### d. Whether the entity is primarily concerned with state or local affairs

As noted above, the Division is charged with control of consumer protection state-wide. Public court dockets show that the Division currently has cases pending throughout the state. See, e.g., *Novus North, LLC, et al v. The Division of Consumer Protection of the State of Utah*, Case No. 160400775, Fourth Judicial District Court, Utah County, State of Utah; *Michael Daniel Heath, et al., v. Utah Division of Consumer Protection, et al.*, Civil No. 170500129, Fifth Judicial District Court, Iron County. State of Utah; *Wealthonomics, LLC, et al v. the Division of Consumer Protection*, Case No. 160400150, Fourth Judicial District Court, Utah County, State of Utah; *Utah Division of Consumer Protection v. Anahuac Corp., et al.,* Case No. 170904296, Third Judicial District Court, Salt Lake County, State of Utah; *Spectator Blankets, LLC v. Division of Consumer Protection of the Utah Department of Commerce*, Case No. 170400629, Fourth Judicial District Court, Utah County, State of Utah; and, *ADM Ventures, Inc. v. The Division of Consumer Protection of the Department of Commerce*, Case No. 150905316, Third Judicial District Court, Salt Lake County, State of Utah. Last year, the Division sued Performax in the Second Judicial District, Davis County, Case No. 160700827.

The Division cites offenders and brings civil actions based on complaints from around the state. It investigates all consumer complaints it receives, and brings action where appropriate. The court finds the Division's efforts are primarily concerned with state affairs.

### e. Whether the state is liable for judgments against the entity.

In the current case, it is not clear whether the state or the Division would be liable in a lawsuit. However, in the current case, the Division is the plaintiff seeking recovery. This factor is not relevant

when the entity is not the party being sued and therefore is not at risk for judgment. "In cases involving state agency plaintiffs, courts have looked instead to whether any recovery by the entity inures to the state's benefit." *Md. Stadium Auth. V. Ellerbe Becket Inc.*, 407 F.3d 255, 262 (4th Cir. 2005) (citing *Mo., Kan., & Tex. Ry. V. Hickman*, 183 U.S. 53, 59 (1901). *Commonwealth of Pennsylvania Public School Employees Retirement System v. Citigroup*, Civ.A. No. 11-2583, 2011 WL 1937737, at * 2 (E.D.Pa. 2011).

By statute, any financial recovery by the Division is placed into a state Consumer Education Fund. At the end of the year, all money in that Fund, less $500,000.00, reverts to the Utah State treasury. Thus, a recovery by the Division inures to the State's benefit, and the fifth factor weighs in favor of the court's finding that the Division is an arm of the State.

## 2. MOTION FOR JURISDICTIONAL DISCOVERY

Whether to grant jurisdictional discovery is a matter of discretion for the district court. *Budde v. Ling-Temco-Vought, Inc.,* 511 F.2d 1033, 1035 (10th Cir. 1975). The party seeking jurisdictional discovery bears the burden of demonstrating (1) a legal entitlement to it and (2) how the party would be harmed by a denial of jurisdictional discovery. *Applied Capital, Inc. v. ADT Corp.*, 2017 U.S. Dist. LEXIS 16780 (10th Cir. 2014) citing *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir.2012).

MPA alleges that further information is needed to analyze two factors of whether the Division is an arm of the State – state funding and autonomy under state law. As noted above, sufficient information regarding both the funding of the Division and the autonomy under state law has been provided through the briefs and public records. It is unlikely that MPA would find additional evidence that would render the Division autonomous from the State. For this reason, the motion for jurisdictional discovery is denied. MPA has not shown a legal entitlement to the discovery and MPA is not harmed by its denial.

## CONCLUSION

Based on the above reasoning, and the arguments contained in the briefs submitted to the court, this case is to be remanded to the Third Judicial District Court of Salt Lake County. As an entity created by the state for the purpose of state control over consumer protection, the Division is an arm of the state and therefore subject to the same Eleventh Amendment immunity afforded to the state.

Plaintiff's Motion to Remand (ECF No. 18) is hereby granted and Defendants' motion for jurisdictional discovery (ECF No. 30) is denied.

IT IS SO ORDERED.

DATED this 21st day of December, 2017.

BY THE COURT:

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT